## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| BRIAN BARRY, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| HEADWAY TECHNOLOGIES, INC., HUTCHINSON TECHNOLOGY INC., MAGNECOMP PRECISION TECHNOLOGY PUBLIC CO. LTD., NAT PERIPHERAL (DONG GUAN) CO., LTD., NAT PERIPHERAL (H.K.) CO., LTD., NHK SPRING CO. LTD., NHK INTERNATIONAL CORPORATION, NHK SPRING (THAILAND) CO., LTD., NHK SPRING PRECISION (GUANGZHOU) CO., LTD., SAE MAGNETICS (H.K.) LTD., AND TDK CORPORATION, | |
| Defendants. | |

Plaintiff Brian Barry, on behalf of himself and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to himself and upon information and belief as to all other matters, based on the investigation of counsel, brings this class action against Defendants Headway Technologies, Inc., Hutchinson Technology Inc., Magnecomp Precision Technology Public Co. Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., NHK Spring Co. Ltd., NHK International Corporation, NHK Spring (Thailand)

Co., Ltd., NHK Spring Precision (Guangzhou) Co, Ltd., SAE Magnetics (H.K.) Ltd., and TDK Corporation for damages, injunctive relief and other relief pursuant to federal antitrust laws, state antitrust, unfair competition, consumer protection laws, and the laws of unjust enrichment, demands a trial by jury, and allege as follows:

## NATURE OF THE ACTION

1.     This lawsuit emerges from a global conspiracy among Defendants and their co-conspirators to implement and augment prices of and allot market shares for hard disk drive ("HDD") suspension assemblies. Makan Delrahim, Assistant Attorney General of the Department of Justice ("DOJ") for the Antitrust Division, has explained that HDD suspension assemblies are "critical to the operation and performance of electronic devices, and their impact on American consumers and business is direct and substantial."[1]

2.     HDD suspension assemblies, a component of hard disk drives, utilizes magnetism to store information electronically.  HDDs use recording heads, attached to sliders, to read from and write onto rapidly spinning disks.  HDD suspension assemblies secure the recording heads close to the disks and supply the electrical connection from the recording heads to the circuitry of the hard disk drives.  HDDs containing HDD suspension assemblies are sold both as a single, stand-alone device and are also incorporated into a vast array of ubiquitous electronics such as computers, gaming systems, printers, and copy machines.

3.     Plaintiff seeks to serve as representative for all persons and entities who,

---

[1] *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives*, DOJ (Jul. 29, 2019), https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk.

during the period from and including May 2008 through such time as the anticompetitive effects of the Defendants' behavior ceased (the "Class Period"), indirectly purchased a product not for resale, including a component part of one or more HDD suspension assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants.

4.    At all pertinent times, Defendants manufactured and sold HDD suspension assemblies into and within the United States.  As of 2016, Defendants TDK and NHK, along with their subsidiaries, were the leading manufacturers of HDD suspension assemblies, with a combined worldwide market share of approximately 90%.[2]

5.    From approximately May 2008 through at least April 2016, Defendants and their co-conspirators contracted, combined, or conspired to augment, increase, sustained, and/or stabilize prices of and allocate market shares for HDD suspension assemblies in the United States.[3]

6.    Since at least 2016, the United States government, along with other foreign governments have investigated potential price-fixing of HDD suspension assemblies; in 2019, Defendant NHK (as defined below) admitted guilt.  On July 29, 2019, the DOJ announced that Defendant NHK agreed to plead guilty and pay a $28.5 million fine for its role in a conspiracy to suppress and eliminate competition by fixing prices of HDD suspension assemblies sold in the United States and elsewhere.[4]

---

[2] *TDK, NHK Spring raided over price collusion suspicions*, MLEX  (Jul. 26, 2016).

[3] Information, *United States of America v. NHK Spring Co., Ltd*, 2:19-cr-20503 (E.D. Mich. Jul. 29, 2019), ECF No. 1 ("NHK Information").

[4] *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension*

7.     Previously, in July 2016, the Japanese Fair Trade Commission ("JFTC") raided both Defendants TDK (as defined below) and NHK (or certain of their subsidiaries) based on suspicion that the two companies fixed prices for HDD suspension components.[5]  Ultimately, on February 9, 2018, the JFTC issued a cease and desist order to both Defendants, TDK and NHK, finding that they restricted competition considerably in the HDD suspension assemblies market by reaching an arrangement to control sales prices.

8.     Accompanying the JFTC investigation, the DOJ began an investigation regarding HDD suspension assemblies.  Pursuant to that investigation,  on July 26, 2016 Defendant Hutchinson Technology, Inc. received a letter from the DOJ requesting documents relating to the investigation.[6]

9.     Following the DOJ investigation, in April 2018, Brazilian antitrust authorities began their own investigation into allegations that Defendant TDK and four other companies colluded from 2003 to May 2016 to implement price fixing of HDD suspension assemblies.  The international cartel purportedly shared data and allocated customers, in an effort to sustain artificially high prices on HDD suspension assemblies used in hard disks.

10.   The Defendants and their co-conspirators participated in a combination and conspiracy to restrain and eradicate competition for HDD suspension assemblies by colluding to rig bids for, and to augment, stabilize, and control the prices of HDD

---

*Assemblies Used in Hard Disk Drives*, DOJ (Jul. 29, 2019),
https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk; NHK Information at 2-3.

[5] TDK, NHK raided over price collusion suspicions, MLEX (Jul 26, 2016).

[6] *Hutchinson contacted by DOJ in hard-disk suspension assembly investigation,* Mlex (Jul. 28, 2016).

suspension assemblies sold in the United States and elsewhere.  The combination and conspiracy employed by the Defendants and their co-conspirators was in excessive suppression of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection laws, and the common law of unjust enrichment.

11.   As a direct and proximate result of the anticompetitive and unlawful behavior purported herein, Plaintiff and the Classes (as defined below) paid more during the Class Period for HDD suspension assemblies than they otherwise would have paid in a competitive market, through which they have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

12.   Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1). Plaintiff also asserts claims for actual and exemplary damages pursuant to state antitrust, unfair competition, consumer protection and unjust enrichment laws, and seeks to obtain restitution, recover damages and secure other relief against the Defendants for violations of those state laws. Plaintiff and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

13.   This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in

which some members of the proposed Classes are citizens of a state different from some Defendants.

14.    Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

15.    This Court has *in personam* jurisdiction over Defendants because each, either directly or through the ownership and/or control of its subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of HDD suspension assemblies throughout the United States as a whole, including in this District; (c) had substantial aggregate contacts with the United States, including in this District; or (d) engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District.  Defendants also conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

16.    Defendants participated in behavior both inside and outside of the United States that caused direct, considerable, and logically foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

17.    The activities of Defendants and their co-conspirators were within the movement of, and were intended to and did have a considerable effect on interstate

6

commerce of the United States. Defendants' products are sold within the movement of interstate commerce.

18.    HDD suspension assemblies constructed abroad by Defendants and sold for usage in products in the United States are goods brought into the United States for sale, and therefore comprise import commerce.  To the extent any HDD suspension assemblies are purchased in the United States, and such HDD suspension assemblies do not comprise import commerce, Defendants' activities with respect thereto, as more fully purported herein during the Class Period, had, and continue to have, a direct, considerable and logically foreseeable effect on United States commerce. The anticompetitive behavior, and its effect on United States commerce characterized herein, proximately caused antitrust injury in the United States.

19.    By reason of the unlawful actions hereinafter purported, Defendants' unlawful actions considerably affected commerce throughout the United States, causing injury to Plaintiff and members of the Classes.  Defendants, directly and through their agents, were involved in actions affecting all states, to fix, increase, sustain and/or stabilize prices, and allocate the market and customers in the United States for HDD suspension assemblies, which conspiracy unjustly surpressed trade and adversely impacted the market for HDD suspension assemblies.

20.    Defendants' conspiracy and wrongdoing described herein unfavorably impacted persons in the United States who bought a product in the United States not for resale which included an HDD suspension assembly.

## THE PARTIES

21.    Plaintiff Brian Barry is a U.S. Citizen currently residing in Bali, Indonesia. During the Class Period, Mr. Barry resided in Los Angeles, California, where he purchased at least one HDD suspension assembly indirectly from at least one Defendant, and was harmed in his business or property as a result of Defendants'

7

unlawful behavior alleged herein.

**TDK Defendants**

22.   Defendant TDK Corporation, a Japanese corporation indicates its principal place of business as Tokyo, Japan. TDK Corporation – directly and/or through its associates, which it wholly owned and/or controlled – produced, advertised and/or sold HDD suspension assemblies that were bought and sold throughout the United States, including in this District, during the Class Period.

23.   Defendant Magnecomp Precision Technology Public Co. Ltd., a Thai corporation indicates its principal place of business as Ayutthaya, Thailand. It is an affiliate of and wholly controlled by TDK Corporation. Defendant Magnecomp – directly and/or through its associates – produced, advertised and/or sold HDD suspension assemblies that were bought and sold throughout the United States, including in this District, during the Class Period.

24.   Defendant SAE Magnetics (H.K.) Ltd., a Chinese corporation indicates its principal place of business as Hong Kong, China. Defendant SAE Magnetics – directly and/or through its associates – produced, advertised and/or sold HDD suspension assemblies that were bought and sold throughout the United States, including in this District, during the Class Period.

25.   Defendant Hutchinson Technology Inc., a Minnesota corporation indicates its principal place of business as Hutchinson, Minnesota. TDK Corporation acquired Hutchinson Technology Inc. on October 6, 2016.[7] It is an associate of and wholly controlled by TDK Corporation.  Hutchinson Technology Inc. – directly and/or through its affiliates – produced, advertised and/or sold HDD suspension

---

[7] TDK Corporation Announces Completion of Hutchinson Acquisition, TDK Global (Oct. 6, 2016),

assemblies that were bought and sold throughout the United States, including in this District, during the Class Period.

26.   Defendant Headway Technologies, Inc., a Delaware corporation indicates its principal place of business as Milpitas, California. It is an associate of and wholly controlled by TDK Corporation. Defendant Headway Technologies – directly and/or through its affiliates – produced, advertised and/or sold HDD suspension assemblies that were bought and sold throughout the United States, including in this District, during the Class Period.

**NHK Defendants**

27.   Defendant NHK Spring Co., Ltd., a Japanese corporation indicates its principal place of business as Yokohama, Japan. NHK Spring Co., Ltd. – directly and/or through its associates, which it wholly owned and/or controlled – produced, advertised and/or sold HDD suspension assemblies that were bought and sold throughout the United States, including in this District, during the Class Period.

28.   Defendant NHK International Corporation, a Michigan corporation indicates its principal place of business as Novi, Michigan. It is an associate of and wholly controlled by NHK Spring Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – produced, advertised and/or sold HDD suspension assemblies that were bought and sold throughout the United States, including in this District, during the Class Period.

29.   Defendant NHK Spring (Thailand) Co., Ltd., a Thai corporation indicates its principal place of business as Samutprakarn, Thailand. It is an associate of and wholly controlled by NHK Spring Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – produced, advertised and/or sold HDD suspension assemblies that were bought and sold throughout the United States,

including in this District, during the Class Period.

30. Defendant NHK Spring Precision (Guangzhou) Co., Ltd., a Chinese corporation indicates its principal place of business as Guangzhou, China. It is an associate of and wholly controlled by NHK Spring Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – produced, advertised and/or sold HDD suspension assemblies that were bought and sold throughout the United States, including in this District, during the Class Period.

31. Defendant NAT Peripheral (Dong Guan) Co., Ltd. ("NAT Dong Guan"), a Chinese corporation indicates its principal place of business as Guangdong, China. It is an associate of and wholly controlled by NHK Spring Co., Ltd. – Defendant Nat Dong Guan directly and/or through its subsidiaries, which it wholly owned and/or controlled – produced, advertised and/or sold HDD suspension assemblies that were bought and sold throughout the United States, including in this District, during the Class Period.

32. Defendant NAT Peripheral (H.K.) Co., Ltd. ("NAT H.K."), a Chinese corporation indicates its principal place of business as Hong Kong, China. It is an associate of and wholly controlled by NHK Spring Co., Ltd. – Defendant NAT H.K. directly and/or through its subsidiaries, which it wholly owned and/or controlled – produced, advertised and/or sold HDD suspension assemblies that were bought and sold throughout the United States, including in this District, during the Class Period.

## AGENTS AND CO-CONSPIRATORS

33. The actions purported against the Defendants in this Complaint were approved, instructed, or completed by their officers, agents, employees, or representatives, while actively involved in the management and operation of Defendants' business or affairs.

34. Various persons and/or firms not declared as Defendants herein may have

participated as co-conspirators in the offenses purported herein and may have executed acts and made statements in furtherance thereof. Plaintiff reserves the right to designate some or all of these persons as defendants at a later date.

35.  Whenever in this Complaint there is reference to any action, deed, or transaction of any corporation, the purported claim means that the corporation operated in the action, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively involved in the administration, guidance, command, or transaction of the corporation's business or affairs.

36.  Each Defendant or co-conspirator acted as the administrator, deputy, or joint venture of, or for, other Defendants and co-conspirators with respect to the actions, offenses, and common course of behavior purported by Plaintiff. Each Defendant and co-conspirator that is a subsidiary of a foreign parent acts as the United States agent for HDD suspension assemblies made by its parent company.

## <u>INTERSTATE TRADE AND COMMERCE</u>

37.  The behavior of Defendants and their co-conspirators has transpired in, and impacted the continuous stream of interstate trade and commerce of the United States in that, *inter alia*:

a.  During the Class Period, Defendants and their co-conspirators sold and dispensed HDD suspension assemblies throughout the United States;

b.  Defendants and their co-conspirators have each used mechanisms of interstate commerce to produce, sell, dispense, and/or advertise HDD suspension assemblies throughout the United States;

c.  Defendants and their co-conspirators produced, sold, and transported considerable quantities of HDD suspension assemblies in a constant and sustained stream of interstate commerce to customers; and

d.    The conspiracy purported herein impacted billions of dollars of commerce. During the Class Period, Defendants jointly controlled approximately 90% of the global HDD suspension parts market.   Defendants and their co-conspirators have inflicted antitrust injury by increasing prices, through artificial means, paid by Plaintiff and other entities who are themselves involved in commerce.

## FACTUAL ALLEGATIONS

### A.    The HDD Suspension Assembly Industry.

38.   HDD suspension assemblies are a critical component of HDDs.[8]  HDDs use magnetism to write, retrieve and store vast amounts of information electronically.[9] HDDs are installed in a vast array of electronic products including computers, copy machines, and gaming systems.

39.   HDDs are comprised of, among other things, spinning magnetic disks and magnetic heads that fly over the disks, reading and writing the information contained on the disks (*see* Figure 1).[10] HDD suspension assemblies hold the magnetic heads in position over the disks.[11] Thus, HDD suspension assemblies are necessary component for the functioning of HDDs.

---

[8] *Hutchinson Shares Extend Slide on Continued FTC Antitrust Review*, THESTREET (Jan. 5, 2016), https://www.thestreet.com/story/13412469/1/hutchinson-shares-keep-falling-on-extended-ftc-antitrust-review.html.

[9] *Hard Drives*, EXPLAINTHATSTUFF, https://www.explainthatstuff.com/harddrive.html (last visited Jul. 30, 2015).

[10] *Id.*; *Hard Disk Drives*, TEXAS A&M UNIVERSITY, https://microtribodynamics.engr.tamu.edu/hard-disk-drives/ (last visited Jul. 30, 2019).

[11] *Hard Drives*, EXPLAINTHATSTUFF.

(<u>Figure 1</u>)[12]



---

[12] *Hard Disk Drives*, TEXAS A&M UNIVERSITY.

(<u>Figure 2: HDD Suspension Assembly</u>)[13]



40.   The Defendants produce and sell HDD suspension assemblies in the United States and elsewhere to companies that implement HDD suspension assemblies into HDDs. Consumers then purchase HDDs as either stand-alone products, or as part of larger systems, such as computers.  In 2018, global unit shipments of HDDs were nearly 400 million.[14]  One study predicts HDD shipments will increase in the coming years.[15]

---

[13] *Suspension Assembly for Hard Disk Drive*, Encyclopedia of Tribology, https://link.springer.com/referenceworkentry/10.1007%2F978-0-387-92897-5_1140 (last visited Jul. 30, 2019).

[14] *Worldwide Unit Shipments of Hard Disk Drives (HDD) from 1976 to 2022 (in millions)*, STATISTA, https://www.statista.com/statistics/398951/global-shipment-figures-for-hard-disk-drives/ (last visited Jul. 30, 2019).

[15] *Id.*

**B.**   **Defendant NHK Agreed to Plead to Guilty and Pay a Criminal Fine for Conspiring to Fix Prices and Allocate Market Shares for HDD Suspension Assemblies.**

41.   On July 29, 2019, Defendant NHK Spring Co., Ltd. agreed to plead guilty and pay a $28.5 million fine for its role in the global conspiracy alleged herein.[16] According to the criminal Information, from May 2008 to April 2016, NHK Spring Co., Ltd. engaged in a conspiracy consisting of a continuous agreement, understanding, and concert of action among Defendant NHK and its co-conspirators to refrain from competing on prices for, fix the prices of, and allot their respective market shares for HDD suspension assemblies to be sold in the United States and elsewhere.[17]

42.   According to the Information, NHK Spring Co., Ltd. and its co-conspirators effectuated their conspiracy by, among other things:

a.   joining in discussions and attending meetings during which they arrived at arrangements to abstain from competing on prices for, fix the prices of, and allot their respective market shares for HDD suspension assemblies;

b.   partaking in the sharing of HDD suspension assemblies pricing information;

c.   depending on their arrangements not to compete and using the shared pricing information to instruct their negotiations with U.S. and foreign customers;

d.   selling HDD suspension assemblies in, or for delivery to, the United States and elsewhere at prices reached through collusion and noncompetitive means;

---

[16] NHK Spring agrees to plead guilty to fixing prices for suspension assemblies used in hard disk drives, MLEX (Jul. 29, 2019)

[17] Information at 3.

e.      accepting payment for HDD suspension assemblies sold in, or for delivery to the United States and elsewhere at prices reached through collusion and noncompetitive means.

### C.      Additional Government Investigations

43.     In July 2016, the Japanese Fair Trade Commission ("JFTC") raided both Defendants TDK and NHK based on suspicion that the two companies and or their subsidiaries augmented prices for HDD suspension components.   Ultimately, on February 9, 2018, the JFTC issued a cease and desist order to both Defendants TDK and NHK and found that they considerably suppressed competition in the HDD suspension assemblies' market by arranging to sustain fixed sales prices.

44.   Accompanying the JFTC investigation, the DOJ opened an investigation regarding HDD suspension assemblies.  On July 26, 2016,  Defendant Hutchinson Technology Inc. received a letter from the DOJ requesting documents relating to the investigation and expressed its intent to cooperate.[18] At the time Hutchinson received the DOJ's letter, TDK Corporation's pending acquisition of Hutchinson Technology Inc. was under review by the U.S> Federal Trade Commission.[19]

45.   Following the DOJ investigation, in April 2018, Brazilian antitrust authorities began their own investigation into allegations that Defendant TDK and four other companies colluded from 2003 to May 2016 to implement price fixing of HDD suspension assemblies.  The international cartel purportedly shared data and allotted customers, in an effort to sustain artificially high prices on HDD suspension assemblies used in hard disks.

---

[18] *Hutchinson contacted by DOJ in hard-disk suspension assembly investigation,* Mlex (Jul. 28, 2016).

[19] *Id.*

16

**D.    The Characteristics of the HDD Suspension Assembly Market Render the Conspiracy More Plausible.**

46.   Like other electronic product markets that have been the subject of antitrust investigations (cathode ray tubes, lithium ion batteries, and capacitors), the HDD suspension assemblies market has attributes that make it vulnerable to collusion, including high barriers to entry and high market concentration. Collectively, these qualities increase the probability and feasibility of anticompetitive behavior and manipulation in the HDD suspension assemblies' market.

### 1.   The HDD Suspension Assemblies Market Has High Barriers to Entry

47.   A collusive arrangement that increases product prices beyond competitive levels would, under elementary economic principles, entice new participants to the market seeking to benefit from the supracompetitive pricing. Where, however, there are considerable barriers to entry, new participants are much less likely to enter the market. Thus, barriers to entry help promote the development and sustainment of cartels.

48.   This is particularly true here where manufacturing HDD suspension assemblies requires the ability to manufacture precision assemblies in ample volume. As Defendant Hutchinson Technology Inc. conceded, "We believe that the number of entities that have the technical capability and capacity for producing precision suspension assemblies or components in large volumes will remain small."[20]

---

[20] *Hutchinson Shares Extend Slide on Continued FTC Antitrust Review*, THESTREET (Jan. 5, 2016),

49.   Moreover, increased demand for other types of data storage technology, such as those that utilize flash memory, limit opportunities for new entrants to the HDD suspension assembly market, which caters to hard disk drives.[21]

**2.   The HDD suspension assemblies Market is Highly Concentrated.**

50.   Upon further information and belief, there were countless suppliers of HDD suspension assemblies in the 1980s and the market was largely competitive. However, a process of market consolidation began in the 1990s and by 2002 the market had already become concentrated. Over the past 18 years, this trend has been additionally exacerbated by two factors: (a) further consolidation among HDD suspension assemblies' manufacturers, and (b) the vertical integration of companies like TDK that previously relied on independent component suppliers in their production of HDDs.

51.   Recently, market consolidation has progressed to the point where globally, there are now only two large-scale suppliers of HDD suspension assemblies: TDK and NHK. For example, TDK acquired a formerly independent HDD suspension assemblies manufacturer in 2007 and had fully integrated that acquisition by 2009.

52.   Hutchinson Technology, formerly the largest producer of HDD suspension assemblies, was acquired by Defendant TDK in 2016. Prior to the acquisition, Hutchinson had performed its own series of consolidation and was a principal supplier of HDD suspension assemblies to Western Digital Corporation (headquartered in San Jose, CA); Seagate Technology, LLC (Cupertino, CA); and

---

https://www.thestreet.com/story/13412469/1/hutchinson-shares-keep-falling-on-extended-ftc-antitrust-review.html.

[21] *Id.*

SAE Magnetics, Ltd/TDK Corporation (Tokyo, Japan). That business is now contained within the TDK family.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action on behalf of himself and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities who, during the Class Period, indirectly purchased a product not for resale which included as a component part one or more HDD suspension assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants.

54.     Plaintiff also brings this action on behalf of himself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following class (the "Damages Class"):

> All persons and entities who, during the Class Period, in the Indirect Purchaser States[22] purchased a product not for resale which included as a component part one or more HDD suspension assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants.

---

[22] The Indirect Purchaser States are the states listed in the Second and Third Claims for Relief.

55. The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are the Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and mechanisms of the federal government, states and their subdivisions, agencies and mechanisms, and persons who purchased HDD suspension assemblies directly or for resale.

56. While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes there to be (at least) thousands of members in each Class.

57. Common questions of law and fact exist as to all members of the Classes. This is especially true given the character of the Defendants' conspiracy, which was broadly applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a) Whether the Defendants and their co-conspirators were involved in a combination and conspiracy among themselves to augment, increase, sustain or stabilize the prices of HDD suspension assemblies sold in the United States;

(b) The identity of the participants of the purported conspiracy;

(c) The extent and duration of the purported conspiracy and the actions carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d) Whether the purported conspiracy violated the Sherman Act, as purported in the First Claim for Relief;

(e) Whether the purported conspiracy violated state antitrust, unfair competition, and/or consumer protection laws, as purported in the Second and Third Claims for Relief;

(f)     Whether the Defendants unfairly enriched themselves to the disadvantage of the Plaintiff and the members of the Classes, thereby entitling Plaintiff and the members of the Classes to disgorgement of all benefits derived by Defendants, as purported in the Fourth Claim for Relief;

(g)     Whether the behavior of the Defendants and their co-conspirators, as purported in this Complaint, caused injury to the business or property of Plaintiff and the members of the Classes;

(h)     The influence of the purported conspiracy on the prices of HDD suspension assemblies sold in the United States during the Class Period;

(i)     Whether Plaintiff and the members of the Classes had any reason to be aware of or suspect the conspiracy, or possessed any means to discover the conspiracy;

(j)     Whether the Defendants and their co-conspirators fraudulently suppressed the conspiracy's existence from Plaintiff and the members of the Classes;

(k)     The suitable and just injunctive and related equitable relief for the Nationwide Class; and

(l)     The suitable and just class-wide measure of damages for the Damages Class.

58.     Plaintiff's claims are common of the claims of the members of the Classes, and Plaintiff will fairly and sufficiently preserve the interests of the Classes. Plaintiff and all members of the Classes are commonly impacted by the Defendants' unjust behavior in that they paid artificially increased prices for HDD suspension assemblies bought indirectly from the Defendants and/or their co-conspirators.

21

59.     Plaintiff's claims derive from the same common course of behavior invoking the claims of the other members of the Classes. Plaintiff's interests coincide with, and are not in opposition to, those of the other members of the Classes. Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

60.     The questions of law and fact similar to the members of the Classes govern over any questions impacting only individual members, including legal and factual issues relating to liability and damages.

61.     Class action treatment is a superior method for the just and effective adjudication of the controversy, in that, among other things, such treatment will permit a large number of commonly affected persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would constitute. The benefits of progressing through the class mechanism, including providing harmed persons or entities with an approach for obtaining redress for claims that might not be practicable to pursue individually, considerably outweigh any complications that may become apparent in the management of this class action.

62.     The prosecution of separate actions by individual members of the Classes would create a risk of conflicting or differing adjudications, establishing incompatible measurements of behavior for the Defendants.

## PLAINTIFF AND THE CLASSES SUFFERED ANTITRUST INJURY

63.     Defendants' price-fixing conspiracy had the following effects, among others:

(a)     Price competition has been suppressed or eradicated with regard to HDD suspension assemblies;

(b)     The prices of HDD suspension assemblies have been fixed, increased, sustained, or stabilized at artificially inflated levels;

(c)     Indirect purchasers of HDD suspension assemblies have been dispossessed of free and open competition; and

(d)     Indirect purchasers of HDD suspension assemblies paid artificially exaggerated prices for HDD suspension assemblies.

64.     During the Class Period, Plaintiff and the members of the Classes paid supra-competitive prices for HDD suspension assemblies. HDD manufacturers and other purchasers of HDD suspension assemblies provided unjustly increased prices to Plaintiff and the members of the Classes. Those overcharges have unfairly enriched Defendants.

65.     The markets for HDDs and HDD suspension assemblies are inextricably linked and interconnected because the market for HDD suspension assemblies exists to supply the HDD market.  Without the HDDs, the HDD suspension assemblies have little to no value because they have no autonomous utility or function.

66.     HDD suspension assemblies are recognizable, distinct physical products that remain fundamentally unchanged when integrated into an HDD. Subsequently, HDD suspension assemblies follow an identifiable physical chain of distribution from the Defendants to Plaintiff and the members of the Classes, and costs attributable to HDD suspension assemblies can be followed through the chain of distribution to Plaintiff and the members of the Classes.

67.     Just as HDD suspension assemblies can be physically traced through the supply chain, while their prices can also be traced to show that alterations in the prices paid by direct buyers of HDD suspension assemblies impact prices paid by indirect buyers for HDDs containing HDD suspension assemblies.

68.     While even a monopolist would increase its prices when the cost of its inputs rose, the economic necessity of passing through cost changes, increases with the degree of competition a firm faces.

69.     The economic and legal literature has acknowledged that unlawful overcharges in an element normally result in higher prices for products containing that price-fixed element. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."[23]

70.     As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers…Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets.

---

[23] Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis*, 128 U. Pa. L. Rev. 268, 275 (1979).

> This general phenomenon of cost pass through is well established
> in antitrust laws and economics as well.[24]

71.     The purpose of the conspiratorial behavior of Defendants and their co-conspirators was to increase, augment, and rig or sustain the price of HDD suspension assemblies and, as a direct and predictable result, the price of products containing HDD suspension assemblies.  Economists have established procedures to isolate and understand the interconnectedness between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis - called regression analysis - is frequently utilized in the real world and in litigation to ascertain the impact of a price escalation on one cost in a product (or service) that is an assemblage of costs.  Thus, it is feasible to isolate and identify only the effect of an increase in the price of HDD suspension assemblies on prices for products containing HDD suspension assemblies even though such products contain a number of other elements whose prices may be varied over time. A regression model can explain how variation in the price of HDD suspension assemblies affects changes in the price of assembled products, such as computers.   In such models, the price of HDD suspension assemblies would be considered as an independent or explanatory variable. The model can isolate how adjustments in the price of HDD suspension assemblies effect the price of products containing HDD suspension assemblies while evaluating for the impact of other price-determining elements.

---

[24] Order re: Class Certification at 13-14, *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, No. J.C.C.P. No. 4106, (Cal. Sup. Ct. Aug. 29, 2000).

72.     The precise amount of the overcharge impacting the prices of products containing HDD suspension assemblies can be calculated and assessed.  Commonly used and well-accepted economic models can be used to measure both the degree and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiff and class members is determinable.

73.     By reason of the infractions of the antitrust law purported herein, Plaintiff and the members of the Classes have suffered injury to their businesses or property, having paid higher prices for HDD suspension assemblies than they would have paid in the absence of the Defendants' illegal contract, combination, or conspiracy, and, as a result, have sustained damages in an amount that has yet to be determined.  This is an antitrust injury of the type that the antitrust laws were meant to discipline and prohibit.

## PLAINTIFF' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A.     Defendants Have Engaged in a Continuing Violation

74.     Plaintiff repeat and re-allege the allegations set forth above.

75.     Plaintiff and members of the Classes had no knowledge of the combination or conspiracy purported herein, or of facts adequate to place them on inquiry notice of the claims set forth herein.

76.     Plaintiff and members of the Classes are consumers who bought HDDs containing HDD assemblies for their use alone and not intended for resale. No information in the public domain was available to Plaintiff and members of the Classes prior to July 26, 2016.  Moreover, Plaintiff and members of the Classes had no direct contact or interaction with the Defendants and had no means from which

they could have discovered that the Defendants were involved in the conspiracy combination and conspiracy purported herein before July 26, 2016.

77.    This Complaint supposes a continuous course of behavior (including behavior within the applicably defined periods), and Defendants' unlawful behavior has imposed continuous and accumulating harm within the applicable statutes of limitations.

78.    Each time Defendants were involved in an unlawful action complained of here, Defendants undertook an overt act that has exacted harm on Plaintiff and other members of the Classes.

79.    Because Defendants have been involved in a continuous course of behavior, Plaintiff's claims are timely.

**B.    <u>Fraudulent Concealment Tolled the Statute of Limitations</u>**

80.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiff and the Classes.  Plaintiff and members of the Classes did not discover, and could not discover through the application of feasible diligence, the presence of the conspiracy purported herein until July 26, 2016, the date that the JFTC's raid on Defendants TDK and NHK became known to the public.

81.    Prior to the JFTC's raid, Plaintiff and members of the Classes were unaware of Defendants' unlawful behavior, and were unaware before then that they were purchasing HDD suspension assemblies at supra-competitive prices throughout the United States during the Class Period.  No information, actual or productive, was ever made accessible to Plaintiff and members of the Classes that even hinted to Plaintiff that they were being damaged by Defendants' unlawful behavior.

82.    Fundamentally, the Defendants' and their co-conspirators' anticompetitive conspiracy was inherently concealed and obfuscated.    HDD suspension assemblies are not excused from antitrust regulation and, thus, Plaintiff and members of the Classes reasonably treated the HDD suspension assemblies industry as though it were a competitive industry.  Subsequently, a reasonable person under the circumstances would not have been forewarned to begin to investigate the legitimacy of Defendants' HDD suspension assemblies' prices before July 26, 2016, the date of the JFTC raid.

83.    Because the purported conspiracy was inherently concealed and agreeably veiled by Defendants and their co-conspirators, Plaintiff and members of the Classes had no knowledge of the purported conspiracy, or of any facts or information that would have caused a moderately diligent person to investigate whether a conspiracy existed, until July 26, 2016.

84.    Consequently, the statute of limitations applicable to Plaintiff' and the Classes' claims was tolled and did not begin to run until July 26, 2016.

## II.   VIOLATIONS ALLEGED
### FIRST CLAIM FOR RELIEF
**Violation of Section 1 of the Sherman Act**
**(on behalf of Plaintiff and the Nationwide Class)**

85.    Plaintiff incorporate by reference the allegations in the preceding paragraphs.

86.    Defendants and unnamed co-conspirators joined in and were involved in a contract, combination, or conspiracy in excessive suppression of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

87.    The deeds committed by the Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were

commissioned, sanctioned, or completed by their officers, agents, employees, or representatives while actively involved in the administration of their affairs.

88.     During the Class Period, Defendants and their co-conspirators entered into a continuous arrangement, accord and conspiracy in suppression of trade to artificially fix, increase, sustain, and control prices for HDD suspension assemblies, thereby creating anticompetitive effects.

89.     The anticompetitive acts were purposely directed at the United States market for HDD suspension assemblies and had a considerable and predictable effect on interstate commerce by increasing and augmenting prices for HDD suspension assemblies throughout the United States.

90.     The conspiratorial deeds and combinations have caused excessive suppression on the markets for HDD suspension assemblies.

91.     As a result of Defendants' unlawful behavior, Plaintiff and other similarly situated indirect buyers in the Nationwide Class who bought HDD suspension assemblies have been harmed by being forced to pay bloated, supra-competitive prices for HDD suspension assemblies.

92.     In developing and implementing the purported arrangement, accord and conspiracy, Defendants and their co-conspirators did those deeds that they combined and conspired to do, including but not limited to the acts, practices and course of behavior set forth herein.

93.     Defendants conspiracy had the following effects, among others:

(a)     Price competition in the market for HDD suspension assemblies has been constrained, suppressed, and/or eradicated in the United States;

(b)     Prices for HDD suspension assemblies sold by Defendants and their co-conspirators have been fixed, increased, monitored, and

preserved at artificially high, non-competitive levels throughout the United States; and

(c)     Plaintiff and members of the Nationwide Class who bought HDD suspension assemblies indirectly from Defendants and their co-conspirators have been dispossessed of the advantages of free and open competition.

94.     Plaintiff and members of the Nationwide Class have been harmed and will continue to be harmed in their business and property by paying more for HDD suspension assemblies purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

95.     The purported contract, combination, or conspiracy is a *per se* infraction of the federal antitrust laws.

96.     Plaintiff and members of the Nationwide Class are entitled to an injunction against Defendants, impeding and prohibiting the violations purported herein.

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiff and the Damages Class)

97.     Plaintiff incorporate by reference the allegations in the preceding paragraphs.

98.     During the Class Period, Defendants and their co-conspirators were involved in a continuous contract, combination or conspiracy with respect to the sale of HDD suspension assemblies in excessive suppression of trade and commerce and in violation of the multiple state antitrust and other statutes set forth below.

99.     The contract, combination, or conspiracy comprise an arrangement among Defendants and their co-conspirators to fix, increase, augment, preserve,

and/or sustain at artificially supra-competitive levels the prices for HDD suspension assemblies and to allot customers for these goods in the United States.

100.   In developing and invoking this conspiracy, the Defendants and their co-conspirators executed deeds in furtherance of the combination and conspiracy, including:

(a)   cooperating in meetings and conversations among themselves in the United States and elsewhere during which they arranged to price HDD suspension assemblies at certain levels, and otherwise to fix, increase, augment, sustain, or preserve effective prices paid by Plaintiff and members of the Damages Class with respect to HDD suspension assemblies sold in the United States;

(b)   allotting customers and markets for HDD suspension assemblies in the United States in furtherance of their arrangements; and

(c)   engaging in meetings and conversations among themselves in the United States and elsewhere to enforce, fulfill, and regulate the unlawful arrangements they reached.

101.   Defendants and their co-conspirators were involved in the deeds described above for the purpose of implementing their unlawful arrangements to augment, fix, sustain, or stabilize prices and to allot customers with respect to HDD suspension assemblies.

102.   Defendants' anticompetitive actions explained above were conscious and deliberate and constitute violations or flagrant violations of the following state antitrust statutes.

103.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq*.

31

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicated throughout Arizona; (2) HDD suspension assemblies prices were increased, fixed, sustained and regulated at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially bloated and augmented prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior considerably impacted Arizona commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By reason of the foregoing, Defendants entered into arrangements in suppression of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Correspondingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

104.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the California Business and Professions Code, §§ 16700, *et seq*.

(a)     During the Class Period, Defendants and their co-conspirators joined and were involved in a continuous unlawful trust in suppression of the trade and commerce explained above in violation of Section 16720, California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to augment, increase,

32

stabilize, and sustain prices of, and allot markets for, HDD suspension assemblies at supra-competitive levels.

(b)    The aforesaid violations of Section 16720, California Business and Professions Code, constituted, without limitation, of a continuous unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to augment, increase, sustain, and stabilize the prices of, and to allot markets for, HDD suspension assemblies.

(c)    For the purpose of developing and implementing the unlawful trust, the Defendants and their co-conspirators have done those deeds which they combined and conspired to do, including but not limited to the actions, practices and course of behavior set forth above and the following: (1) Augmenting, increasing, sustaining, and pegging the price of HDD suspension assemblies; and (2) Allocating among themselves the production of HDD suspension assemblies.

(d)    The combination and conspiracy purported herein has had, *inter alia*, the following effects: (1) Price competition in the sale of HDD suspension assemblies has been constrained, suppressed, and/or eradicated in the State of California; (2) Prices for HDD suspension assemblies sold by Defendants and their co-conspirators have been augmented, increased, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased HDD suspension assemblies directly or indirectly from Defendants and their co-conspirators have been dispossessed of the benefit of free and open competition.

(e)    As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property in that they paid more for HDD suspension assemblies than they otherwise would have paid in the absence of Defendants' unlawful behavior. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiff and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

105.    Defendants have entered into an unlawful arrangement in suppression of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout the District of Columbia; (2) HDD suspension assemblies prices were increased, fixed, sustained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)    During the Class Period, Defendants' illegal behavior considerably impacted District of Columbia commerce.

(c)    As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

34

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

106.   The Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Iowa Code §§ 553.1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Iowa; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Iowa; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior considerably impacted Iowa commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

35

107.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

(a)   Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Kansas; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Kansas; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)   During the Class Period, Defendants' illegal behavior considerably impacted Kansas commerce.

(c)   As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)   By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq*.

108.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*.

36

(a)   Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Maine; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)   During the Class Period, Defendants' illegal behavior considerably impacted Maine commerce.

(c)   As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)   By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

109.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)   Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Michigan; (2) HDD suspension assemblies prices were increased, augmented, sustained and

37

stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)    During the Class Period, Defendants' illegal behavior considerably impacted Michigan commerce.

(c)    As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)    By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq*.

110.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eliminated throughout Minnesota; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and

38

members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior considerably impacted Minnesota commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

111.    Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Mississippi; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior considerably impacted Mississippi commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

112.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Nebraska; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior considerably impacted Nebraska commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

40

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

113.     Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Nevada; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior considerably impacted Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiff and members of the

41

Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

114.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

(a)   Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout New Hampshire; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)   During the Class Period, Defendants' illegal behavior considerably impacted New Hampshire commerce.

(c)   As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)   By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

115.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout New Mexico; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior considerably impacted New Mexico commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

116.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the New York General Business Laws §§ 340, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout New York; (2) HDD suspension assemblies prices were increased, augmented, sustained and

43

stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies when they purchased HDDs containing HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior considerably impacted New York commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of the New York Donnelly Act, §§ 340, *et seq*. The behavior set forth above is a *per se* violation of the Act. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

117.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout North Carolina; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were

44

dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)    During the Class Period, Defendants' illegal behavior considerably impacted North Carolina commerce.

(c)    As a direct and proximate result of the Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)    By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

118.    Defendants have entered into an unlawful arrangement in suppression of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout North Dakota; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

45

(b)     During the Class Period, Defendants' illegal behavior had a substantial effect on North Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

119.    Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Oregon; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Oregon; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been

46

harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

120.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout South Dakota; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior had a substantial effect on South Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of South Dakota

47

Codified Laws Ann. §§ 37-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

121.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Tennessee; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior had a substantial effect on Tennessee commerce.

(c)     As a direct and proximate result of the Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

122.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq*.

(a)   Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Utah; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Utah; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)   During the Class Period, Defendants' illegal behavior had a substantial effect on Utah commerce.

(c)   As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)   By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq*.

123.   Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*.

(a)   Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was

49

constrained, suppressed, and eradicate throughout Vermont; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

124.    Defendants have entered into an unlawful arrangement in suppression of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout West Virginia; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff and members of the Damages Class were

50

dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)　　During the Class Period, Defendants' illegal behavior had a substantial effect on West Virginia commerce.

(c)　　As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)　　By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

125.　Defendants have entered into an unlawful arrangement in suppression of trade in violation of the Wisconsin Statutes §§ 133.01*, et seq*.

(a)　　Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Wisconsin; (2) HDD suspension assemblies prices were increased, augmented, sustained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     By virtue of the aforementioned, Defendants have joined arrangements in suppression of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

126.   Plaintiff and members of the Damages Class in each of the above states have been harmed in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and arrangement. Plaintiff and members of the Damages Class have paid more for HDD suspension assemblies than they otherwise would have paid in the absence of Defendants' unlawful behavior. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' behavior unlawful.

127.   In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive behavior come at the expense and detriment of the Plaintiff and the members of the Damages Class.

128.   Accordingly, Plaintiff and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

## THIRD CLAIM FOR RELIEF
### Violation of State Consumer Protection Statutes
### (on behalf of Plaintiff and the Damages Class)

129.   Plaintiff incorporate by reference the allegations in the preceding paragraphs.

130.   Defendants were involved in unfair competition or unjust, unreasonable, disingenuous or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

131.   Defendants have knowingly entered into an unlawful arrangement in suppression of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq.*

(a)     Defendants knowingly agreed to, and did in fact, act in suppression of trade or commerce by affecting, augmenting, controlling, and/or sustaining at non-competitive and artificially inflated levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Arkansas and took efforts to conceal their arrangements from Plaintiff and members of the Damages Class.

(b)     The aforementioned behavior on the part of the Defendants comprises "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)     Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Arkansas; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiff and the members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and the members of the Damages Class

paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(d)     During the Class Period, Defendants' illegal behavior considerably impacted Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful behavior of Defendants, Plaintiff and the members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(f)     Defendants have engaged in unfair competition or unjust or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

132.     Defendants have engaged in unfair competition or unjust, unreasonable, disingenuous or fraudulent acts or practices in violation of California Business and Professions Code § 17200, et seq.:

(a)     During the Class Period, Defendants marketed, sold, or distributed HDD suspension assemblies in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as purported herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c) Defendants' behavior as purported herein violates Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as purported herein, comprised a common, continuous, and consistent course of behavior of unfair competition by means of unjust, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

(d) Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unjust, unconscionable, unlawful or fraudulent;

(e) Defendants' acts or practices are unfair to consumers of HDD suspension assemblies (or products containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code;

(f) Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code;

(g) Plaintiff and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices;

(h)     The illegal behavior purported herein is continuous and there is no indication that Defendants will not continue such activity into the future;

(i)     The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause Plaintiff and the members of the Damages Class to pay supra-competitive and artificially-inflated prices for HDD suspension assemblies (or products containing them). Plaintiff and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)     The behavior of Defendants as purported in this Complaint violates Section 17200 of the California Business and Professions Code.

(k)     As purported in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful behavior and by Defendants' unfair competition. Plaintiff and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

133.   Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a)     Defendants agreed to, and did in fact, act in suppression of trade or commerce by affecting, augmenting, controlling and/or sustaining,

56

at artificial and/or non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in the District of Columbia.

(b)    The foregoing behavior comprises "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiff were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD suspension assemblies. Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing HDD suspension assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges. Defendants' behavior with regard to sales of HDD suspension assemblies, including their illegal conspiracy to secretly fix the price of HDD suspension assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unjust advantage of Plaintiff. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD suspension assemblies.

(c)    Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies price competition was constrained,

suppressed, and eradicate throughout the District of Columbia; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(d)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed and made vulnerable to further injury. Defendants have engaged in unfair competition or unjust or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

134.    Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a)     Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Florida; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout Florida; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

58

(b)    During the Class Period, Defendants' illegal behavior considerably impacted Florida commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed and made vulnerable to further injury.

(d)    Defendants have engaged in unfair competition or unjust or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

135.    Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

(a)    Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Hawaii; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)    During the Class Period, Defendants' illegal behavior considerably impacted Hawaii commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed and made vulnerable to further injury.

(d)    Defendants have engaged in unfair competition or unjust or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

136.    Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

(a)    Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

(a)    Defendants agreed to, and did in fact, act in suppression of trade or commerce in a market which includes Massachusetts, by affecting, augmenting, controlling and/or sustaining at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Massachusetts and took efforts to conceal their arrangements from Plaintiff and members of the Damages Class.

(b)    Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Massachusetts; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class were harmed and made vulnerable to further injury.

(d)     Certain of the Defendants have or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not sustaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

(e)     By virtue of the aforementioned, Defendants engaged in unfair competition and unjust or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiff and members of the Damages Class to multiple damages.

137.   Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

(a)     Plaintiff and the Damages Class purchased HDD suspension assemblies for personal, family, or household purposes.

(b)     Defendants engaged in the behavior described herein in connection with the sale of HDD suspension assemblies in trade or commerce in a market that includes Missouri.

(c)     Defendants and their co-conspirators agreed to, and did in fact affect, augment, control, and/or sustained, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Missouri, which behavior comprised unfair practices in that it was unlawful under federal and

61

state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(d)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD suspension assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD suspension assemblies they purchased.

(e)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD suspension assemblies by making public statements that were not in accord with the facts.

(f)    Defendants' statements and behavior concerning the price of HDD suspension assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD suspension assemblies at prices established by a free and fair market.

(g)    Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies  price competition was constrained, suppressed, and eradicate throughout Missouri; (2) HDD suspension assemblies  prices were increased, augmented, sustained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid

supra-competitive, artificially inflated prices for HDD suspension assemblies.

(h)     The foregoing acts and practices were comprised of unlawful practices in violation of the Missouri Merchandising Practices Act.

(i)     As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.

(j)     Accordingly, Plaintiff and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

138.   Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq.*

(a)     Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies   price competition was constrained, suppressed, and eradicate throughout Montana; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and

members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior considerably impacted Montana commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed and made vulnerable to further injury.

(d)     Defendants have engaged in unfair competition or unjust or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

139.   Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a)     Defendants and their co-conspirators agreed to, and did in fact, act in suppression of trade or commerce by affecting, augmenting, controlling and/or sustaining at non-competitive and artificially inflated levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in New Mexico and took efforts to conceal their arrangements from Plaintiff and members of the Damages Class.

(b)     The aforementioned behavior on the part of Defendants comprises "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such behavior, *inter alia*, resulted in a gross disparity between the value received by Plaintiff and the members of the Damages Class and the prices paid by them for HDD suspension

64

assemblies as set forth in N.M.S.A., § 57-12-2E. Plaintiff were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD suspension assemblies. Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing HDD suspension assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff' could avoid the overcharges. Defendants' behavior with regard to sales of HDD suspension assemblies, including their illegal conspiracy to secretly fix the price of HDD suspension assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unjust advantage of Plaintiff. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD suspension assemblies.

(c)     Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout New Mexico; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the members of the Damages Class were dispossessed of

free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(d)     During the Class Period, Defendants' illegal behavior considerably impacted New Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful behavior of Defendants, Plaintiff and the members of the Damages Class have been harmed and made vulnerable to further injury.

(f)     Defendants have engaged in unfair competition or unjust or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

140.    Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     Defendants agreed to, and did in fact, act in suppression of trade or commerce by affecting, augmenting, controlling and/or sustaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in New York and took efforts to conceal their arrangements from Plaintiff and members of the Damages Class.

(b)     Defendants and their co-conspirators made public statements about the prices of HDD suspension assemblies and products containing HDD suspension assemblies that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of

66

price increases for HDD suspension assemblies and products containing HDD suspension assemblies; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c)     Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased HDD suspension assemblies were misled to believe that they were paying a fair price for HDD suspension assemblies or the price increases for HDD suspension assemblies were for valid business reasons; and similarly situated consumers were potentially impacted by Defendants' conspiracy.

(d)     Defendants knew that their unlawful trade practices with respect to pricing HDD suspension assemblies would have an impact on New York consumers and not just the Defendants' direct customers.

(e)     Defendants knew that their unlawful trade practices with respect to pricing HDD suspension assemblies would have a broad impact, causing consumer class members who indirectly purchased HDD suspension assemblies to be harmed by paying more for HDD suspension assemblies than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(f)     The behavior of the Defendants described herein comprises consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is comported in a competitive manner.

(g)    Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout New York; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(h)    During the Class Period, Defendants' marketed, sold, or distributed HDD suspension assemblies in New York, and Defendants' illegal behavior considerably impacted New York commerce and consumers.

(i)    During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD suspension assemblies in New York.

(j)    Plaintiff and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

141.   Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

(a)    Defendants agreed to, and did in fact, act in suppression of trade or commerce by affecting, augmenting, controlling and/or sustaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in North

Carolina and took efforts to conceal their arrangements from Plaintiff and members of the Damages Class.

(b)     Defendants' price-fixing conspiracy could not have succeeded absent deceptive behavior by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiff could not possibly have been aware. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of HDD suspension assemblies created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

(c)     The behavior of the Defendants described herein is comprised of consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is comported in a competitive manner.

(d)     Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout North Carolina; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(e)     During the Class Period, Defendants' marketed, sold, or distributed HDD suspension assemblies in North Carolina, and Defendants' illegal behavior considerably impacted North Carolina commerce and consumers.

(f)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD suspension assemblies in North Carolina.

(g)     Plaintiff and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and made vulnerable to further injury. Defendants have engaged in unfair competition or unjust or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

142.    Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

(a)    Members of this Damages Class purchased HDD suspension assemblies for personal, family, or household purposes.

(b)    Defendants agreed to, and did in fact, act in suppression of trade or commerce in a market that includes Rhode Island, by affecting, augmenting, controlling, and/or sustaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Rhode Island.

(c)    Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD suspension assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' HDD suspension assemblies prices were competitive and fair.

(d)    Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Rhode Island; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages

71

Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(e)     As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive behavior, as described herein.

(f)     Defendants'     deception,     including     their     affirmative misrepresentations and omissions concerning the price of HDD suspension assemblies, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing HDD suspension assemblies at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions comprise information important to Plaintiff and members of the Damages Class as they related to the cost of HDD suspension assemblies they purchased.

(g)     Defendants have engaged in unfair competition or unjust or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

143.   Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD suspension assemblies price competition was

72

constrained, suppressed, and eradicate throughout South Carolina; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(b)     During the Class Period, Defendants' illegal behavior had a substantial effect on South Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful behavior, Plaintiff and members of the Damages Class have been harmed in their business and property and made vulnerable to further injury.

(d)     Defendants have engaged in unfair competition or unjust or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

144.     Defendants have engaged in unfair competition or unjust, unreasonable, or deceptive acts or practices in violation of 9 Vermont § 2451, et seq.:

(a)     Defendants and their co-conspirators agreed to, and did in fact, act in suppression of trade or commerce in a market that includes Vermont by affecting, augmenting, controlling, and/or sustaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning their unlawful activities and artificially inflated prices for HDD suspension assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their HDD suspension assemblies prices were competitive and fair.

(c)     Defendants' unlawful behavior had the following effects: (1) HDD suspension assemblies price competition was constrained, suppressed, and eradicate throughout Vermont; (2) HDD suspension assemblies prices were increased, augmented, sustained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were dispossessed of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

(d)     As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive behavior, as described herein.

(e)     Defendants' deception, including their omissions concerning the price of HDD suspension assemblies, likely misled all purchasers acting reasonably under the circumstances to believe that they were

74

purchasing HDD suspension assemblies at prices born by a free and fair market. Defendants' misleading behavior and unconscionable activities comprises unfair competition or unjust or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (on behalf of Plaintiff and the Damages Class)

145.   Plaintiff incorporate by reference the allegations in the preceding paragraphs.

146.   Plaintiff bring this claim under the laws of all states listed in the Second and Third Claims, *supra*.

147.   As a result of their unlawful behavior described above, Defendants have and will continue to be unfairly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of HDD suspension assemblies.

148.   Defendants have benefited from their unlawful actions and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains arising from the overpayments made by Plaintiff of the members of the Damages Class for HDD suspension assemblies.

149.   Plaintiff and the members of the Damages Class are entitled to the number of Defendants' ill-gotten gains arising from their unlawful, unfair, and inequitable behavior. Plaintiff and the members of the Damages Class are entitled to the establishment of a constructive trust comprised of all ill-gotten gains from which

75

Plaintiff and the members of the Damages Class may make claims on a pro rata basis.

150.   Pursuit of any remedies against the firms from which Plaintiff and the members of the Damages Class purchased HDDs containing HDD suspension assemblies subject to Defendants' conspiracy would have been futile.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiff respectfully request that:

151.   The Court determine that this action may be sustained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

152.   That the unlawful behavior, contract, conspiracy, or combination purported herein be adjudged and decreed:

> (a)   An excessive suppression of trade or commerce in violation of Section 1 of the Sherman Act;
>
> (b)   A *per se* violation of Section 1 of the Sherman Act;
>
> (c)   An unlawful combination, trust, arrangement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and
>
> (d)   Acts of unjust enrichment by Defendants as set forth herein.

153.   Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

154.   Plaintiff and the members of the Damages Class recover damages, to the maximum degree allowed by such laws, in the form of restitution and/or disgorgement of profits unjustly obtained from them;

155.   Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and prohibit from in any manner continuing, sustaining or renewing the behavior, contract, conspiracy, or combination purported herein, or from joining any other contract, conspiracy, or combination having a similar purpose or impact, and from adopting or following any practice, plan, program, or device having a similar purpose or impact;

156.   Plaintiff and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants gained as a result of their acts of unfair competition and deeds of unjust enrichment;

157.   Plaintiff and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

158.   Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

159.   Plaintiff and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

Dated:  September 3, 2019                    Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            By: /s/Brent John LaPointe
                                            Brent John LaPointe (Bar ID: MO63950)
                                            Laurence M. Rosen
                                            Phillip Kim
                                            275 Madison Avenue, 34th Floor
                                            New York, NY 10016
                                            Tel: (212) 686-1060
                                            Fax: (212) 202-3827
                                            blapointe@rosenlegal.com
                                            lrosen@rosenlegal.com
                                            pkim@rosenlegal.com

                                            *Counsel for Plaintiff and the Proposed
                                            Indirect Purchaser Classes*